IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CONNIE JO FRAZIER,                           6:13-cv-01279-BR

       Plaintiff,                          OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

       Defendant.


ARTHUR WILBER STEVENS, III
Black Chapman Webber & Stevens
221 Stewart Avenue, Suite 209
Medford, OR 97501
(541) 772-9850

       Attorneys for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
**RONALD K. SILVER**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**KATHRYN ANN MILLER**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2139

        Attorneys for Defendant


**BROWN, Judge.**

    Plaintiff Connie Jo Frazier seeks judicial review of a final

decision of the Commissioner of the Social Security

Administration (SSA) in which she denied Plaintiff's applications

for Disability Insurance Benefits (DIB) under Title II of the

Social Security Act (the Act) and Supplemental Security Income

(SSI) under Title XVI of the Act.

    This Court has jurisdiction to review the Commissioner's

decision pursuant to 42 U.S.C. § 405(g).  Following a thorough

review of the record, the Court **REVERSES** the Commissioner's final

decision and **REMANDS** this matter.


2 - OPINION AND ORDER

### ADMINISTRATIVE HISTORY

Plaintiff filed her applications for DIB and SSI on March 10, 2006.  Tr. 19.[1]  Her applications were denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on August 13, 2009.  Tr. 94.  At the hearing Plaintiff was represented by an attorney.  Plaintiff, Janice Frazier (Plaintiff's mother), and a vocational expert (VE) testified at the hearing.  Tr. 95.

The ALJ issued a decision on September 25, 2009, in which he found Plaintiff is not entitled to benefits.  Tr. 146.  The Appeals Council, however, reversed and remanded the matter back to the ALJ for further consideration of medical testimony and Plaintiff's mental impairments.  Tr. 149-50.

On remand an ALJ held a second hearing on November 18, 2011.  Tr. 39.  At the hearing Plaintiff was represented by an attorney.  Plaintiff, Plaintiff's mother, and a VE testified at the hearing.  Tr. 40.

The ALJ issued a decision on December 28, 2011, in which he once again found Plaintiff is not entitled to benefits.  Tr. 32.  That decision became the final decision of the Commissioner on May 29, 2013, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.

---

[1]  Citations to the official transcript of record filed by the Commissioner on February 18, 2014, are referred to as "Tr."

3 - OPINION AND ORDER

## BACKGROUND

Plaintiff was born on April 4, 1965, and was 46 years old on the date of the hearing.  Tr. 45, 98.  Plaintiff graduated from college with a Bachelor of Arts in public relations.  Tr. 45. Plaintiff has prior relevant work experience as a secretary, legal secretary, general clerk, appointment clerk, and customer-service representative.  Tr. 84-85.

Plaintiff alleges disability since August 1, 2003, due to "[c]hronic nerve pain," lower-back pain, fibromyalgia, and seizures.  Tr. 237, 276.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence except where noted.  *See* Tr. 24-28.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is

4 - OPINION AND ORDER

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g). *See also Brewes v. Comm'r*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is "more than a mere scintilla" of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).

The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

Social Security Regulations set out a five-step sequential
process for determining whether an applicant is disabled within
the meaning of the Social Security Act.  *Keyser v. Comm'r of
Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011).  *See also
Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R.
§§ 404.1520, 416.920.  Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner
determines the claimant is engaged in substantial gainful
activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).
*See also Keyser,* 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner
determines the claimant does not have any medically severe
impairment or combination of impairments.  *Stout v. Comm'r Soc.
Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20
C.F.R. § 416.920(a)(4)(ii); *Keyser*, 648 F.3d at 724.

At Step Three the Commissioner must determine whether a
claimant's impairments meet or equal one of the listed
impairments and are so severe that they preclude substantial

gainful activity.  The claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific

work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser,* 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser,* 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since March 15, 2010, her application date.  Tr. 22.

8 - OPINION AND ORDER

At Step Two the ALJ found Plaintiff has the severe impairments of degenerative disc disease of the cervical spine, "status post fusion"; degenerative disc disease of the lumbar spine, "status post laminectomy"; fibromyalgia; histrionic personality disorder with dependent features; "status post ulnar nerve transposition"; pseudoseizures; depression, mild; pain disorder; and obesity.  Tr. 22.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments.  Tr. 22-23.  In his RFC assessment the ALJ found Plaintiff has the functional capacity to

> lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours per eight-hour work day, and sit for six hours per eight-hour work day.  She can perform no more than frequent kneeling and climbing ramps or stairs, and she can perform no more than occasional balancing, stooping, crouching, crawling, and climbing ladders, ropes, or scaffolds.  The claimant should avoid continuous use of her right arm and hand.  She is limited to occasional overhead lifting and reaching bilaterally.  She has no visual or communicative limitations.  Due to her orthopedic conditions, the claimant should avoid concentrated exposure to vibrations, and she should avoid hazardous, dangerous machinery or unprotected heights due to medication.  The claimant is limited to remembering, carrying out, and performing out [sic] simple instructions and tasks.  She should [not] perform work that requires close interaction with the general public, but she is capable of casual contact.

Tr. 23.

At Step Four the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 30.

At Step Five, however, the ALJ found Plaintiff could perform jobs that exist in significant numbers in the national economy such as a job as a label coder, bottling-line attendant, or garment sorter.  Tr. 31.  Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 32.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to follow the remand order from the Appeals Council; (2) rejecting Plaintiff's testimony; (3) discounting the medical opinions of Peter LeBray, Ph.D., David R. Truhn, Psy.D., and Kenneth P. Butters, M.D.; (4) discrediting the lay-witness testimony of Janice Frazier, Carol Kilgore, and Mary J. Willis; (5) failing to consider the combined effects of Plaintiff's impairments in the RFC; (6) failing to consult a medical expert concerning Plaintiff's remote alleged onset date; and (7) posing an inadequate hypothetical to the VE.

## I.   Compliance with Appeals Council Remand Order

Plaintiff contends the ALJ failed to comply with the Appeals Council's remand order because the ALJ failed to take further action to complete the administrative record.

The Appeals Council remanded the case to the ALJ with orders to consider Dr. LeBray's opinion; to evaluate Plaintiff's mental

impairments pursuant to 20 C.F.R. §§ 404.1520a, 416.920a; to offer Plaintiff a new hearing; and to "take any further actions needed to complete the administrative record."  Tr. 149-50.

On remand the ALJ extensively discussed and ascribed "full weight" to Dr. LeBray's opinion, evaluated Plaintiff's mental impairments pursuant to the proper authorities, held a new hearing in which he inquired about the availability of any further medical records or upcoming examinations, and received new medical evidence.  Tr. 22-23, 29-30, 46-50, 714-53.

Accordingly, on this record the Court concludes the ALJ complied with the Appeals Council's remand order.

## II.  Plaintiff's Testimony

Plaintiff contends the ALJ failed to cite sufficient reasons fo discrediting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). *See also Spelatz v. Astrue*, 321 F. App'x 689, 692 (9th Cir. 2009).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

*See also Delgado v. Commissioner of Social Sec. Admin.*, 500 F. App'x 570, 570 (9th Cir. 2012).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

**A.   Summary of Plaintiff's Testimony**

Plaintiff testified at the August 13, 2009, and November 8, 2011, hearings and submitted Adult Function Reports dated June 8, 2006; October 3, 2006; and April 17, 2007.

**1.   August 13, 2009, Hearing Testimony**

At the August 13, 2009, hearing Plaintiff testified she lost her most recent job after suffering a transient ischemic attack and back injuries. Tr. 106-08. As of her alleged onset date of disability in August 2003, Plaintiff testified her back and left-leg impairments were her most limiting followed by seizures, urinary difficulties, and short-term memory loss. Tr. 109-11. In addition, Plaintiff testified she has nerve problems

12- OPINION AND ORDER

in her right elbow that will require surgery.  Tr. 112-13.

Plaintiff reported she has three types of seizures.
During the first and mildest type, Plaintiff stated she
experiences "mild tremors," slurred speech, and confusion
approximately "a couple of times" per week.  Tr. 110.  During the
second type of seizure, which Plaintiff testified occurs
approximately once per week, she will "stare off into the
distance and then crumple to the ground," after which she will
require help to get to bed.  Tr. 110, 116.  Finally, Plaintiff
reported the third type of seizure occurs approximately once per
month, and they are "violent" episodes during which her "body
tends to move itself" occasionally causing injury.  Tr. 110, 116.

### 2.    November 18, 2011, Hearing Testimony

At the November 18, 2011, hearing Plaintiff testified
her right hand no longer has sufficient strength and grip to
carry a glass.  Tr. 48.  Plaintiff reported she uses a wheelchair
that a relative purchased at Goodwill to ambulate outside of her
home, and she uses a walker inside of her home.  Tr. 51-52.  As a
result of her seizures and memory problems, Plaintiff testified
she cannot drive.  Tr. 52-53.  Plaintiff testified she has
suffered from long-term depression that progressed to the point
where Plaintiff's counselor considered having her hospitalized.
Tr. 77-78.

Plaintiff reported her elderly mother takes care of her

on a daily basis, and she spends most of her time talking to her mother or watching movies. Tr. 53-54. Plaintiff testified she cannot stand "for more than a couple minutes" without pain that causes her to sit down. Tr. 76.

Plaintiff also testified she had her first seizure in 2003 in the waiting room of a doctor's office, and she lost her job that year because of seizures at work. Tr. 57, 61. Plaintiff associated the onset of her seizures with her 2003 cervical-spine surgery. Tr. 64. As to more recent public seizures, Plaintiff reported suffering "five seizures" at her dentist's office in 2007. Tr. 67.

Plaintiff again reported three types of seizures. Plaintiff testified the first type of seizure involves "little ticks" and stuttered speech and occurs weekly. Tr. 68-70. During the second type of seizure, which occurs approximately once per month, Plaintiff reported her head twitches and she speaks nonsensical phrases. Tr. 68. Plaintiff testified she experiences her third type of seizure approximately once every two months, and such episodes are the most severe with her body "going kaboom." Tr. 68. Plaintiff reported recovery from all three types of episodes takes "a long time," especially for the third type. Tr. 71.

### 3. June 8, 2006, Adult Function Report

In her June 8, 2006, Adult Function Report, Plaintiff

reported she may run errands with a relative or help with chores around the house on a good day, but on bad days she must stay in bed as a result of headaches, pain, and seizures.  Tr. 303. Plaintiff reported she cannot button her clothes, requires help bathing, and needs help feeding herself and using the restroom after a seizure.  Tr. 304.  Plaintiff indicated her conditions have affected her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, and use her hands.  Tr. 308.  Plaintiff reported she can lift up to ten pounds and can walk two blocks with pain before requiring five or ten minutes of rest.  Tr. 308.  Plaintiff also indicated she can pay attention for 30 minutes on a good day, but only ten minutes on a bad day, and she does not follow instructions well. Tr. 308.

### 4.    October 3, 2006, Adult Function Report

In her October 3, 2006, Adult Function Report, Plaintiff reported her activities of daily living as follows: "Go to the bathroom, I have an assisted bath some days, some evenings I go to our den and lie down to watch TV with my mother. All other times I'm in bed."  Tr. 341.  Plaintiff indicated her conditions have caused sleep deprivation and insomnia, and she requires help with personal-care activities.  Tr. 342.  Plaintiff reported she goes outside only to travel to medical appointments

and on a "seldom" basis will socialize by talking on the
telephone or receiving visitors.  Tr. 345.  Plaintiff also
indicated her conditions affect the same functional abilities as
in reported in the June 8, 2006, Adult Function Report, but her
capacity to walk had diminished to the point that she could only
walk seven feet with a cane to the restroom.  Tr. 346-47.

### 5.    April 17, 2007, Adult Function Report

In her April 17, 2007, Adult Function Report, Plaintiff
reported in a typical day she listens to music and a recording of
the Bible on a portable compact-disk player and watches
television.  Tr. 367.  Plaintiff reported she cannot shave her
legs and requires help dressing, bathing, caring for her hair due
to her right-arm limitations, feeding herself, and using the
toilet.  Tr. 368.  Plaintiff indicated her conditions affect her
abilities to lift, squat, bend, stand, walk, sit, kneel, climb
stairs, remember, complete tasks, concentrate, understand, follow
instructions, and use her hands.  Tr. 372.  Plaintiff reported
she can only walk from her bedroom to the living room or
bathroom.  Tr. 372.

### B.  Analysis

The ALJ rejected Plaintiff's testimony on the grounds that
Plaintiff's allegations were unsupported and at times
contradicted by her medical-treatment history, Plaintiff

demonstrated exaggerated pain behavior and poor effort during medical examinations, Plaintiff's course of treatment was conservative despite allegations of severe limitations, the record does not support the need for Plaintiff's assistive devices, Plaintiff continued to report an organic cause for her seizures after medical providers explained the seizures were non-physiological in nature, and Plaintiff failed to follow up on mental-health counseling.  Tr. 25-30.

After a thorough review, the Court finds the medical record contains sufficient evidence to support the ALJ's finding of inconsistencies between Plaintiff's allegations and the medical record.  For example, contrary to Plaintiff's allegation of substantial memory problems, on multiple occasions Plaintiff was able to give a comprehensive medical history or was found to have an intact memory.  Tr. 446, 572, 580, 631, 646, 717.  In addition, contrary to Plaintiff's allegations that she is unable to use her right hand, the record reflects Kurt Brewster, M.D., observed Plaintiff carrying a cane in that hand and relying on it for ambulation.  Tr. 581.  *See also* Tr. 452, 454, 471, 479, 545, 551, 584, 662.

The Court also notes there is significant evidence in the record to support the ALJ's finding that Plaintiff demonstrated

exaggerated pain behaviors and exhibited poor effort on examination.  For example, on August 21, 2006, Mark O. Herring, M.D., noted "continuous pain behaviors with grunting and sighing, especially with any position changes." Tr. 546.  On August 31, 2006, Peter S. Kosek, M.D., noted "extreme pain behaviors."  Tr. 573.  *See also, e.g.*, Tr. 580, 610, 662, 666, 723, 727.  The Court, therefore, concludes on this record that the ALJ's reasons, taken together, constitute clear and convincing reasons for rejecting Plaintiff's testimony.

Accordingly, the Court concludes the ALJ did not err when he rejected Plaintiff's testimony because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## III. Medical Testimony

Plaintiff next maintains the ALJ improperly weighed the medical opinions of Drs. LeBray, Truhn, and Butters.[2]

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining

---

[2] Due to the lack of clarity in Plaintiff's Opening Brief, the Court had difficulty identifying much of the medical testimony that Plaintiff alleges the ALJ improperly weighed.  To the extent that Plaintiff attempts to assign error to the ALJ's assessment of additional medical testimony, the Court declines to consider such arguments because Plaintiff failed to specifically and distinctly raise them in her Opening Brief.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  *See also Boyer v. Comm'r Soc. Sec. Admin.*, No. 3:12-cv-00392-SI, 2013 WL 3333060, at *10 (D. Or. July 1, 2013).

physicians if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are supported by substantial evidence in the record. *Taylor*, 659 F.3d at 1232. When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010)(quoting *Lester*, 81 F.3d at 830-31). The opinion of a treating physician is "given greater weight than the opinions of other physicians." *Kelly v. Astrue,* No. 10-36147, 2012 WL 767306, at *1 (9th Cir. 2012)(quoting *Smolen*, 80 F.3d at 1285).

A nonexamining physician is one who neither examines nor treats the claimant. *Lester*, 81 F.3d at 830. *See also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Taylor,* 659 F.3d at 1233 (quoting *Lester*, 81 F.3d at 831). When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate her reasons for doing so with specific and legitimate reasons supported by substantial evidence. *See, e.g., Ryan*, 528 F.3d at 1198. A nonexamining physician's opinion can constitute substantial evidence if it is

19- OPINION AND ORDER

supported by other evidence in the record.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  *See also Simpson v. Astrue*, No. 10-cv-06399-BR, 2012 WL 1340113, at *5 (D. Or. Apr. 18, 2012).

**A.   Dr. Truhn's Opinion**

Dr. Truhn examined Plaintiff on March 21, 2007, and submitted an opinion as to Plaintiff's mental impairments. Tr. 666-72.  After interviewing Plaintiff, Dr. Truhn diagnosed Plaintiff with a pain disorder associated with both psychological and medical conditions, a conversion disorder with mixed presentation, a histrionic personality disorder with dependent and borderline features, and pseudoseizures.  Tr. 671.  Dr. Truhn opined Plaintiff was "experiencing numerous physical complaints that have a psychological basis" and concluded "it is doubtful that she would respond to insight oriented therapy given the personality disorder and that pain disorders do not usually respond to insight oriented therapy."  Tr. 671.  Accordingly, Dr. Truhn assigned Plaintiff a Global Assessment of Functioning

(GAF)[3] score of 42 and a prognosis of "guarded to poor."
Tr. 671-72.  Dr. Truhn noted "[w]ith intensive psychotherapy and
pain clinic, [Plaintiff] may return to her previous level of
functioning."  Tr. 672.

Dr. LeBray, who reviewed Dr. Truhn's opinion and the rest of
Plaintiff's medical record, rejected Dr. Truhn's opinion on the
ground that it was based "mainly on claimant's self-report" and
that Plaintiff demonstrated "reluctance to engage in some testing
instruments."  Tr. 689.  The ALJ adopted Dr. LeBray's conclusions
as to Dr. Truhn's opinion.

The record reflects Dr. Truhn's evaluation of Plaintiff
primarily consisted of a lengthy interview with Plaintiff and
minimal objective testing, and that Plaintiff gave poor effort
during Dr. Truhn's minimal testing.  Thus, the record reflects
Dr. Truhn's evaluation of Plaintiff was based primarily on his
lengthy interview with Plaintiff.  In light of the basis for Dr.

---

[3] Although the fifth edition of the *Diagnostic and
Statistical Manual of Mental Disorders* issued May 27, 2013,
abandoned the GAF scale in favor of standardized assessments for
symptom severity, diagnostic severity, and disability (*see
Diagnostic and Statistical Manual of Mental Disorders V* (DSM-V)
16 (5th ed. 2013)), at the time of Plaintiff's assessment and the
ALJ's opinion the GAF scale was used to report a clinician's
judgment of the patient's overall level of functioning on a scale
of 1 to 100 (*see Diagnostic and Statistical Manual of Mental
Disorders IV* (DSM-IV) 31-34 (4th ed. 2000)).  A GAF of 41-50
indicates serious symptoms (suicidal ideation, severe obsessional
rituals frequent shoplifting) or any serious impairment in
social, occupational, or school functioning (*e.g.*, few friends,
unable to keep a job).  *Diagnostic and Statistical Manual of
Mental Disorders IV* (DSM-IV) 31-34 (4th ed. 2000).

Truhn's opinion, Dr. LeBray's credible rejection of Dr. Truhn's opinion, and the ALJ's proper discrediting of Plaintiff's testimony as noted above, the ALJ reasonably gave little weight to Dr. Truhn's opinion.

Accordingly, the Court concludes the ALJ did not err when he gave little weight to Dr. Truhn's opinion because the ALJ provided legally sufficient reasons for doing so.

**B.  Dr. Butters's Opinion**

The record contains a treatment record from Dr. Butters in which he noted Plaintiff's pinch strength was seven pounds on the right and ten pounds on the left.  Tr. 711.  Dr. Butters noted Plaintiff had demonstrated improvement since surgery on her elbow, and she now exhibited full finger range of motion. Tr. 711.  Dr. Butters, however, opined Plaintiff "would be unable to use her hand in any meaningful employment with *repetitive* use."  Emphasis added.  Tr. 711.

In response to questioning by Plaintiff's attorney, the VE testified although different doctors have different definitions of "repetitive," the most common interpretation of "repetitive" as used by Dr. Butters would preclude "continuous" (but not "frequent") use of Plaintiff's hand.  Tr. 91.  In his evaluation of Plaintiff's RFC the ALJ limited Plaintiff to jobs that do not entail "continuous use of her right arm and hand."  Tr. 23.

Because the ALJ's assessment of Plaintiff's RFC is

consistent with the limitation discussed in Dr. Butters's opinion, the Court concludes on this record that the ALJ did not reject Dr. Butters's opinion.

**C.    Dr. LeBray's Opinion**

Dr. LeBray reviewed Plaintiff's medical records on August 8, 2007, and submitted an opinion concerning Plaintiff's mental limitations.  Tr. 687-89.  Dr. LeBray found Plaintiff can remember simple instructions and locations; can perform simple tasks and maintain attention for at least two-hour periods; and should not be required to closely interact with the general public.  Tr. 689.  In his Psychiatric Review Technique, Dr. LeBray noted "[t]here is insufficient evidence with which to rate this claimant from 08/01/03 through/near [date last insured] of 12/31/04."  Tr. 685.

The ALJ gave Dr. LeBray's opinion "full weight" and included in Plaintiff's RFC the limitations that Dr. LeBray identified in his Mental Residual Functional Capacity Assessment.  Tr. 23, 30. Plaintiff, nonetheless, argues the ALJ improperly ignored Dr. LeBray's finding that the evidence was insufficient to make a determination regarding her mental capacities between the alleged onset date and the date last insured.

As noted, however, at the hearing on remand the ALJ extensively reviewed the medical records with Plaintiff to ensure the completeness of the medical record.  Moreover, Plaintiff has

23- OPINION AND ORDER

not demonstrated any additional evidence exists related to this period nor identified any evidence that the ALJ should have obtained.

On this record, therefore, the Court concludes the ALJ properly incorporated Dr. LeBray's opinion in Plaintiff's RFC.

**IV.  Lay-Witness Testimony**

Plaintiff asserts the ALJ erroneously rejected the lay-witness testimony of Janice Frazier, Carol Kilgore, and Mary J. Willis.

When determining whether a claimant is disabled, the ALJ must consider lay-witness testimony concerning a claimant's limitations and ability to work.  *Molina*, 674 F.3d at 1114.  If the ALJ wishes to discount the testimony of lay-witnesses, he "must give reasons that are germane to each witness." *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). *See also Lester,* 81 F.3d at 834 (improperly rejected lay-witness testimony is credited as a matter of law).

Although the ALJ's reasons for rejecting lay-witness testimony must be "specific," *Stout*, 454 F.3d at 1054, the ALJ need not discuss every witness's testimony on an individualized basis.  *Molina*, 674 F.3d at 1114.  "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.  See also Valentine*, 674 F.3d at 690.

### A.    General Arguments Regarding Lay-Witness Testimony

Defendant makes two general arguments concerning the lay-witness testimony.

#### 1.    Law-of-the-Case Doctrine

Defendant asserts Plaintiff may not assign error to the ALJ's treatment of the lay-witness testimony under the law-of-the-case doctrine because the Appeals Council's narrow remand of the matter to the ALJ conclusively decided the lay-testimony issue in the Commissioner's favor.  This contention is meritless. Defendant does not cite any authority for the proposition that a remand from the Appeals Council (as opposed to a reviewing court) for further consideration of particular issues renders all other determinations made by the Commissioner unappealable.  To the contrary, "'[u]nder the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided *by the same court, or a higher court*, in the same case.'"  *United States v. Smith*, 389 F.3d 944, 948 (9th Cir. 2004)(quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988))(emphasis added).  *See also Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993).  Thus, the law-of-the-case doctrine does not prevent this Court from reviewing the Commissioner's rejection of the lay-witness testimony.

#### 2.    Sufficiency of Plaintiff's Briefing

Defendant also argues the Court should not consider

Plaintiff's argument concerning the lay-witness testimony because "Plaintiff offers no substantive argument in support of her contentions." Def.'s Resp. (#20) at 17 (citing *Carmickle*, 533 F.3d at 1161 n.2). In her Opening Brief Plaintiff summarized the lay-witness testimony, identified the lay witnesses whose testimony the ALJ allegedly rejected in error, and cited the general standard by which a court reviews an ALJ's rejection of lay-witness testimony.

Although the Court agrees with Defendant that Plaintiff does not fully explain her arguments concerning the lay-witness testimony, the Court, in the exercise of its discretion, will consider Plaintiff's arguments concerning the lay-witness testimony.

**B.   Janice Frazier's Testimony**

Janice Frazier, Plaintiff's mother, submitted two Adult Function Reports and testified at both hearings. In the two Adult Function Reports dated June 8, 2006, and September 27, 2006, Frazier reported Plaintiff watches television and talks with visitors as part of her daily activities, but Plaintiff generally stays in bed on bad days. Tr. 312, 325. Although in the June 2006 Report Frazier stated Plaintiff took care of her personal needs "most days," Frazier reported in September 2006 that Plaintiff "needs help" with such activities. Tr. 313, 326. Frazier also reported seizures substantially limit Plaintiff's

26- OPINION AND ORDER

activities, and she needs reminders on days after seizures and is unable to leave the house alone due to those seizures. Tr. 314-15, 328.

At the August 13, 2009, hearing, Frazier testified she had observed Plaintiff having many different types of seizures and stated Plaintiff cannot sit for lengthy periods of time due to back pain and has difficulty using her hands and arms.  Tr. 119, 121.  At the November 8, 2011, hearing, however, Frazier testified she did not know whether Plaintiff had seizure activity during the early period of Plaintiff's alleged disability, but Plaintiff had "fallen out of her bed" a "couple times."  Tr. 82.

Although the ALJ summarized Frazier's testimony, he did not indicate the weight that he was affording to Frazier's testimony or provide any reasons for rejecting her testimony.  Tr. 24.

On this record, therefore, the Court concludes the ALJ erred when he failed to identify the weight that he gave to Frazier's testimony and when he rejected Frazier's testimony because the ALJ did not provide legally sufficient reasons for doing so.

### C.    Mary J. Willis's Testimony

Mary J. Willis, Plaintiff's aunt, submitted a Third Party Function Report dated April 17, 2007.  Tr. 358-65.  Willis reported she sees Plaintiff four times per week and described Plaintiff's daily activities as getting up to use the restroom, listening to compact disks, watching television, and attending

27- OPINION AND ORDER

doctor appointments.  Tr. 358.  Willis stated Plaintiff needs
help with all personal-care activities and cannot leave the house
other than to attend medical appointments because she experiences
seizures.  Tr. 359-60.  Willis indicated Plaintiff's conditions
have affected her abilities to lift, squat, bend, stand, reach,
walk, sit, kneel, climb stairs, see, remember, complete tasks,
concentrate, understand, follow instructions, and use her hands.
Tr. 362.  Willis reported Plaintiff cannot lift more than five
pounds and can only walk approximately 20 feet.  Tr. 362.

The ALJ noted Willis's testimony was similar, though not
identical, to that of Plaintiff and Janice Frazier.  The ALJ,
however, did not indicate how much weight the ALJ assigned to
Willis's testimony nor provide reasons for rejecting Willis's
reports.

On this record, therefore, the Court concludes the ALJ erred
when he failed to identify the weight he gave to Willis's
testimony and when he rejected Willis's testimony because the ALJ
did not provide legally sufficient reasons for doing so.

**D.  Carol Kilgore's Testimony**

On September 30, 2006, Carol Kilgore, Plaintiff's sister,
submitted a Third Party Seizure Questionnaire.  Kilgore reported
she has witnessed Plaintiff having two types of seizures.
Tr. 334-35.  During the first type of seizure Plaintiff stutters
and has difficulty completing thoughts, has memory loss,

experiences tremors, is unable to hold items in her hands, and is sometimes unable to walk.  Tr. 334.  Kilgore noted, however, Plaintiff feels "about the same as before the seizure" after such an episode.  Tr. 334.

Kilgore reported Plaintiff gets a "strange look in her eyes" in the second type of seizure, and Plaintiff's dog will begin barking before Plaintiff collapses or slumps over in her chair. Tr. 334-35.  After this type of episode, Kilgore noted Plaintiff is tired, weak, and sore; does not have any memory; and is in bed for at least one day.  Tr. 335.  When Plaintiff was living in Mississippi she lived with Kilgore, but since Plaintiff moved to Oregon Kilgore has been in contact with Plaintiff by telephone frequently and Kilgore states Plaintiff's seizures have worsened. Tr. 336.

The Court notes the ALJ did not mention Kilgore's testimony in his opinion, and, therefore, the record does not reflect the ALJ even considered Kilgore's testimony.  The Court concludes on this record that the ALJ erred when he failed to address Kilgore's testimony.

**V.   Consideration of Multiple Impairments**

Plaintiff contends the ALJ committed his "most serious error" by failing to "properly consider the combined effect of Plaintiff's multiple impairments . . . as to whether the combined effect should be regarded of sufficient severity . . . to result

in limitations of disabling severity." Pl.'s Opening Br. (#14) at 43. This contention is without merit. The record reflects the ALJ extensively considered the combined effects of Plaintiff's multiple medical impairments in his 14-page opinion and assessed Plaintiff's RFC to include functional limitations based on Plaintiff's medical condition. Tr. 19-32.

Accordingly, on this record the Court concludes the ALJ did not fail to consider the combined effects of Plaintiff's multiple medical impairments.

**VI.  Failure to Consult a Medical Expert Regarding Plaintiff's Remote Alleged Onset Date of Disability**

Plaintiff contends the ALJ erred by failing to consult a medical expert to provide sufficient evidentiary support for Plaintiff's remote onset date.

The requirement in SSR 83-20 that the ALJ consult a medical expert to help determine an onset date of disability when the evidence is ambiguous, however, is inapplicable to this case "[b]ecause the ALJ found that [Plaintiff] was not disabled 'at *any time* through the date of [the] decision,'" and, therefore, "the question of *when* [she] became disabled did not arise." *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008)(emphasis in original).

Accordingly, on this record the Court concludes the ALJ did not err by not consulting a medical expert to determine Plaintiff's onset date of disability.

30- OPINION AND ORDER

**VII. Sufficiency of the RFC and Hypothetical Posed to the VE**

Plaintiff finally contends the ALJ posed an inadequate hypothetical to the VE because the ALJ's evaluation of Plaintiff's RFC and the ALJ's hypothetical posed to the VE failed to adequately account for Dr. Butters's opinion that Plaintiff could not engage in employment that requires "repetitive" use of her right hand.

As noted, however, the ALJ appropriately relied on the VE's testimony that a limitation to less-than-constant use of Plaintiff's right hand was consistent with the most common meaning of Dr. Butters's opinion that Plaintiff could not perform a job that would require "repetitive" use of her hand.

Accordingly, on this record the Court concludes the ALJ's assessment of Plaintiff's RFC and the hypothetical posed by the ALJ to the VE were legally sufficient in this respect.

**VIII.   Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635

F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,*
379 F.3d 587, 593 (9th Cir. 2004)).  The court may not award
benefits punitively and must conduct a "credit-as-true" analysis
to determine whether a claimant is disabled under the Act.  *Id*.
at 1138.

Under the "credit-as-true" doctrine, evidence should be
credited and an immediate award of benefits directed when:

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are not
> any outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required to
> find the claimant disabled if such evidence were
> credited.

*Id*.  The reviewing court should decline to credit testimony when
"outstanding issues" remain.  *Luna v. Astrue,* 623 F.3d 1032, 1035
(9th Cir. 2010).

Although the "credit-as-true" doctrine is not a mandatory
rule in the Ninth Circuit, it leaves the court with the
flexibility to determine whether to enter an award of benefits
upon reversing the Commissioner's decision.  *Connett v. Barnhart*,
340 F.3d 871, 876 (9th Cir. 2003)(citing *Bunnell v. Sullivan*, 947
F.2d 871 (9th Cir. 1991)(*en banc*)).  When the reviewing court
finds the elements of the "credit-as-true" rule have been
satisfied, however, the court may only remand for further
proceedings if "an evaluation of the record as a whole creates
serious doubt that the claimant is, in fact, disabled."

*Garrison*, 759 F.3d at 1021.

On this record the Court concludes there are outstanding issues that must be resolved before a determination of disability can be made.  The Court has concluded the ALJ erred when he failed to consider properly the lay-witness testimony and when he failed to resolve conflicts in portions of the lay-witness testimony.  Moreover, the effect the lay-witness testimony may have on the ALJ's assessment of Plaintiff's RFC or on the ultimate disability determination is unclear.

Accordingly, remand is necessary for the ALJ to weigh each lay witness's testimony and to consider that testimony in the ALJ's assessment of Plaintiff's RFC and his ultimate determination as to whether Plaintiff is disabled.


## CONCLUSION

For these reasons, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter pursuant to sentence

four of 42 U.S.C. § 405(g) for further administrative proceedings
consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 20th day of November, 2014.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge